**CLARKSON LAW FIRM, P.C.**

Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
Valter Malkhasyan (SBN 348491)
*vmalkhasyan@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (231) 788-4070

*Counsel for Plaintiff and the Proposed Class*

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/18/2023 5:43 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Jackson Aubry, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| MICHAEL AZAR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, and DOES 1 through 20, inclusive,<br><br>Defendant. | Case No.: 23STCV11304<br>**CLASS ACTION COMPLAINT FOR DAMAGES:**<br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE SECTION 17200, *et seq.*<br>2. VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT ("CMIA") CAL. CIV. CODE SECTION 56, *et seq.*<br>3. VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT, CAL. CIV. CODE SECTION 1798.80, *et seq*.<br>4. NEGLIGENCE<br>5. INVASION OF PRIVACY<br>6. BREACH OF CONFIDENCE<br>7. UNJUST ENRICHMENT<br>8. CONVERSION<br><br>**DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Plaintiff Michael Azar (**"Plaintiff"** or **"Mr. Azar"**), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Housing Authority of the City of Los Angeles (**"Defendant"** or **"HACLA"**). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## INTRODUCTION

1.     Housing authorities harbor significant personally identifiable information ("PII") and protected health information ("PHI") (together, "PII/PHI") for countless members of the community who trust that their sensitive and private information is safe. Unfortunately, this trust is misplaced and violated when housing authorities knowingly subject themselves to the risk of cyberattacks.

2.     HACLA is a state-chartered public agency providing affordable housing to low-income individuals and families in Los Angeles, California.[1] HACLA maintains more than 6,800 units of public housing and oversees the city's Section 8 housing voucher program, which provides subsidies to more than 56,800 households renting apartments on the private market. With an annual budget of more than $1.84 billion, HACLA has grown to become one of the nation's largest and leading public housing authorities, providing the largest supply of quality affordable housing to residents of the City of Los Angeles.[2] Accordingly, HACLA maintains sensitive PII/PHI for countless members of the community who trust that their sensitive and private information is safe.

3.     Given the breadth of individuals' information at risk (including individuals social security numbers and medical information that cannot be changed), HACLA is an attractive target for a cyber-attack.

---

[1] Justin Luna, *Los Angeles Housing Authority Discloses Data Breach After It Suffers Ransomware Attack*, NEOWIN (March 14, 2023), https://www.neowin.net/news/los-angeles-housing-authority-discloses-data-breach-after-it-suffers-ransomware-attack/?&amp;web_view=true (last accessed on May 15, 2023).

[2] *Fact Shee*t, HACLA, https://www.hacla.org/sites/default/files/Documents/2022-hacla-fact-sheet-v4.pdf (last accessed on May 15, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

4.     In or about March of 2023, HACLA issued a data breach notice to its members notifying them that on December 31, 2022, HACLA discovered that it had been the victim of a complex cyber-attack after finding encrypted files on certain of its computer systems.[3] After a forensic investigation, it was determined that there was **unauthorized access to certain servers for almost a full year**, between January 15, 2022 through December 31, 2022.[4]

5.     Subsequently, HACLA undertook a review of all data contained on its systems that may have been the subject of any unauthorized access or acquisition. On February 13, 2023, HACLA completed this review and determined that the impacted systems contained certain personal information.[5]

6.     Despite its awareness that it was storing highly sensitive personal and medical information that is often valuable and vulnerable to cyber attackers, HACLA failed to take the basic security precautions that could have protected Plaintiff's and the Class's (defined below) sensitive data. For instance, HACLA could archive data, preventing individuals from accessing any personal data by remote use of systems. Instead, HACLA used grossly inadequate computer systems and data security practices that allowed hackers to easily make off with the affected individuals' personal data. These extreme instances of data theft take time, and there were numerous steps along the way where any company following standard IT security practices would have foiled the hackers. But HACLA failed to take these basic precautions.

7.     The HACLA database breach included unauthorized access to the types of information that federal and state law require companies to take security measures to protect. This includes, but is not limited to:

     a.   **Individual's name**,

     b.   **Social Security number,**

     c.   **Date of birth,**

     d.   **Passport number,**

---

[3] Bill Toulas, *L.A Housing Authority Discloses Data Breach After Ransomware Attack*, BLEEPING COMPUTER (March 13, 2023), https://www.bleepingcomputer.com/news/security/la-housing-authority-discloses-data-breach-after-ransomware-attack/ (last accessed on May 15, 2023).
[4] *Id.*
[5] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

    e.   **Driver's license number or state identification number,**

    f.   **Tax identification number,**

    g.   **Military identification number,**

    h.   **Government issued identification number,**

    i.   **Credit/debit card number,**

    j.   **Financial account number,**

    k.   **Health insurance information, and**

    l.   **Medical information**[6] (collectively**, "PII/PHI").**

8.    This data should have received extra, not substandard, protection.[7]

9.    Plaintiff, and everyone affected, is now a victim of identity theft – as any combination of this private information will forever subject them to being targets of cyber-attacks. Passport number cannot be changed. Social Security number cannot be changed. Government/State IDs cannot be changed. Health Information and history remain the same. Tax Identification number remains the same. Therefore, the extent and level of the private information is highly substantial, and will affect the victims of this data breach – Plaintiff and the class, forever. Even years from now, Plaintiff and other affected victims will be subjects to cyber-attacks, and phishing scams. After passwords are changed, third parties who possess this information can easily re-set the passwords, gain access to their bank accounts, continue apply for credit, and gain access to victim's telephones (or be able to do sim-swaps).

10.    Any entity with reasonable data security practices and procedures – especially one guarding valuable data that was a known target for cyber attackers – would monitor for a data security breach. In other words, even if a company negligently left the "bank vault" open (**as HACLA did for almost a full year**), it would still have videos monitoring the bank vault, and alarms that would go off if intruders tried to leave with the loot. However, HACLA failed to implement many standard monitoring and alerting systems.

---

[6] *Fact Shee*t, HACLA, https://www.hacla.org/sites/default/files/Documents/2022-hacla-fact-sheet-v4.pdf (last accessed on May 15, 2023).

[7] Further discovery may demonstrate that the HACLA Database contained information regarding additional individuals.

CLASS ACTION COMPLAINT

11.     This was the second major attack on L.A.'s public sector over the past year. The Los Angeles Unified School District was hit by a ransomware attack in September 2022, and students' personal information was posted in October after school administrators refused to pay.[8] As such, HACLA was aware that Los Angeles County systems were vulnerable to attack by unauthorized third parties. HACLA could have taken measures to prevent the attack but failed to do so.

12.     HACLA disregarded the rights of Plaintiff and the Class by intentionally, willfully, recklessly or negligently: (a) failing to take adequate and reasonable measures to ensure the security of its database; (b) concealing or otherwise omitting the material fact that they did not have systems in place to safeguard individuals' PII/PHI; (c) failing to take available steps to detect and prevent the data breach; (d) failing to monitor its data base and to timely detect the data breach; and (e) failing to provide Plaintiff and the Class prompt and accurate notice of the data breach.

13.     Due to HACLA's inadequate security practices and negligence of identifying system vulnerabilities, affected Class Members now face a constant threat of repeated harm, including but not limited to having to live the rest of their lives knowing that criminals have the ability to compile, build and amass their profiles for decades – **exposing them to a never-ending threat of identity theft, phishing scams, threats, extortion, bullying and harassment**.

14.     Plaintiff and Class Members retain a significant interest in ensuring that their PII/PHI, which remains in HACLA's possession, is protected from further breaches, and seek to remedy the harms suffered as a result of the data breach for himself and on behalf of similarly situated persons whose PII/PHI was stolen.

15.     Plaintiff, individually, and on behalf of similarly situated persons, seeks to recover damages, equitable relief, including injunctive relief, designed to prevent a reoccurrence of the data breach and resulting injuries, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies deemed proper.

///

///

---

[8] Jonathan Lloyd, *What to Know About the LAUSD Ransomware Attack,* NBC LOS ANGELES (October 3, 2022), https://www.nbclosangeles.com/news/local/lausd-ransomware-attack-stolen-hackers-files-information/2998012/ (last accessed on May 15, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

**PARTIES**

16.     Plaintiff Michael Azar, is and at all relevant times, was a California resident. Plaintiff applied for affordable housing through the housing authority of the city of Los Angeles sometime in 2019 and provided sensitive private information to HACLA.

17.     Plaintiff is an applicant for housing with HACLA. To submit an application with HACLA, Plaintiff was required to and did provide his PII/PHI. In making the decision to input sensitive information into HACLA's platform, Plaintiff reasonably expected that HACLA would safeguard his PII/PHI. Plaintiff would not have trusted HACLA with his PII/PHI if he knew that his PII/PHI collected by HACLA would be at risk. Plaintiff has suffered irreparable damages and remains at a significant risk now that both his PII/PHI has been leaked online. Plaintiff has received multiple notifications of hackers attempting to gain unauthorized access to several of his accounts including social media shortly after the data breach attack. Further, Plaintiff has been experiencing an exponential increase in spam texts, emails and calls.

18.     HACLA is a state-chartered public agency providing affordable housing to low-income individuals and families in Los Angeles, California. HACLA receives and expends California and federal public funds.[9] HACLA is organized and exists under and pursuant to the constitution and laws of the State of California and with a primary business address of 2600 Wilshire Blvd, Los Angeles, CA 90057. HACLA manages public housing developments and other rental assistance programs, collecting personal and financial information from thousands of people who receive or apply for housing assistance. HACLA has committed the wrongful acts alleged herein in the County of Los Angeles, State of California.

**JURISDICTION AND VENUE**

19.     This Court has original jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, section 10.

20.     HACLA has committed the wrongful acts alleged herein in the County of Los Angeles, State of California.

---

[9] *Fact Sheet* – HACLA, https://www.hacla.org/sites/default/files/Documents/2022-hacla-fact-sheet-v4.pdf (last accessed on May 15, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

21.     HACLA is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between it and California.

22.     Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395, *et seq*. because HACLA is a state-chartered public agency providing affordable housing to low-income individuals and families in Los Angeles, HACLA conducts business in Los Angeles County, HACLA receives funding for operating within Los Angeles County, and HACLA made numerous misrepresentations that had substantial effects in Los Angeles County, including, but not limited to, privacy misrepresentations.

## FACTUAL ALLEGATIONS

### *Data Breaches and the Market for PII/PHI*

23.     Data breaches in the United States have become commonplace – from nearly 125 million breaches in just the fourth quarter of 2020, to approximately 15 million breaches in the third quarter of 2022 (increasing 167% compared to the previous quarter) – with the goal of criminals being to monetize the stolen data.[10]

24.     When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data—including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[11]

25.     The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that resolution of those problems could take more than a year.[12]

---

[10] Ani Petrosyan, *Number of Data Records Exposed Worldwide From 1st Quarter 2020 to 3rd Quarter 2022*, STATISTA, https://www.statista.com/statistics/1307426/number-of-data-breaches-worldwide/ (last accessed on May 15, 2023).
[11] Identity Theft Resource Center, *2017 Annual Data Breach Year-End Review*, https://www.idtheftcenter.org/wp-content/uploads/images/breach/2017Breaches/2017AnnualDataBreachYearEndReview.pdf (last accessed on May 15, 2023).
[12] Erika Harrell, *Victims of Identity Theft, 2014,* U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS (Revised on November 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last accessed on May 15, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

26.     The U.S. Government Accountability Office has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[13] In the same report, the Government Accountability Office noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[14]

27.     When companies entrusted with people's data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the damages irreparable.

28.     PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000-$1,200 on the dark web[15,16] and the legitimate data brokerage industry is valued at more than $250 billion dollars.

29.     In this black market, criminals seek to sell the spoils of their cyberattacks to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts, and otherwise engage in illegal financial transactions under the victims' names.

30.     PII/PHI have a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. As alleged in more detail below, there is a growing market for individuals' data.[17]

31.     The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that resolution of those problems could take more than a year. Medical information in particular is extremely valuable to identity thieves, and thus, the medical industry

---

[13] U.S. Government Accountability Office Report to Congressional Requesters, *Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services* (March 2019), https://www.gao.gov/assets/700/697985.pdf (last accessed on May 15, 2023).
[14] *Id.*
[15] Ryan Smith, *Revealed-how much is personal data worth on the dark web*?, INSURANCE BUSINESS MAGAZINE, https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-is-personal-data-worth-on-the-dark-web-444455.aspx (last accessed May 15, 2023).
[16] Maria LaMagna, *The sad truth about how much your Google data is worth on the dark web*, MARKETWATCH (last accessed May 15, 2023).
[17] Emily Wilson, *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (February 23, 2019), https://thenextweb.com/contributors/2019/02/23/children-data-sold-the-dark-web/ (last accessed on May 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

has also experienced disproportionally higher numbers of data theft events than other industries. According to a report by the Health Insurance Portability and Accountability Act ("HIPAA") Journal, "healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past nine (9) years, with 2018 seeing more data breaches reported than any other year since records first started being published."[18]

32.    A study done by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out of pocket costs for healthcare they did not receive in order to restore coverage.[19] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

### _The Sensitivity of Individuals' Data Demands Heightened, Vigilant, Protection_

33.    Public sector entities are popular targets for cyberattacks and require top-tier security measures to protect the PII/PHI of users. This was the second major attack on L.A.'s public sector over the past year. The Los Angeles Unified School District was hit by a ransomware attack in September 2022, and students' personal information was posted in October after school administrators refused to pay.[20] As such, HACLA was aware that Los Angeles County systems were vulnerable to attack by unauthorized third parties. HACLA could have taken measures to prevent the attack but failed to do so.

34.    In the instant data breach, a ransomware gang, called LockBit, which is known to be one of the most notorious ransomware-as-a-service operators today, claimed responsibility for the cyberattack against HACLA.[21] The threat actors uploaded a sample of the files they claim to have

---

[18]    _Healthcare Data Breach Statistics_, THE HIPPA JOURNAL, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last accessed on May 15, 2023).
[19]    Elinor Mills, _Study: Medical Identity Theft is Costly for Victims_, CNET (March 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last accessed on May 15, 2023).
[20]    Jonathan Lloyd, _What to Know About the LAUSD Ransomware Attack,_ NBC Los Angeles, (October 3, 2022), https://www.nbclosangeles.com/news/local/lausd-ransomware-attack-stolen-hackers-files-information/2998012/ (last accessed on May 15, 2023).
[21]    _Hackers Target L.A.'s Housing Authority in a Suspected Ransomware Attack,_ LOS ANGELES TIMES (January 4, 2023), https://www.latimes.com/california/story/2023-01-03/hackers-target-l-a-s-housing-authority-in-a-suspected-ransomware-attack (last accessed on May 15, 2023).

stolen from HACLA on December 31, 2022, then followed it up with a threat on January 27, 2023 to leak all files.[22] The LockBit gang tried to negotiate with the agency but failed to reach an agreement.

35.    A Los Angeles Times review of publicly available information on LockBit's site on the dark web found what appeared to be a HACLA bank statement and a list of folders.[23] The group said on the website that information would be released on January 12, 2023 if a ransom were not paid. LockBit's site claimed that the group had obtained more than 15TB of files. The folder names suggested a broad range of data ranging from sensitive to mundane — **from payroll, audits and taxes to a 2021 holiday video**.

36.    The size of the data set and the structure of the folders suggested that the attack targeted a shared file storage system and not a single machine.

37.    LockBit was described as "one of the most active and destructive ransomware variants in the world" in a criminal complaint filed by the Department of Justice against an alleged participant.[24] A ransomware gang called "LockBit" claimed responsibility for the attack and uploaded samples of the files they had stolen from HACLA's network. The attackers set a ransom date, by which an undisclosed amount of money was to be made in exchange for the non-disclosure of the information. They threatened to publish all the files on January 27, 2023. Upon information and belief, ransom negotiations failed as the public-agency declined to meet the hackers' demands.[25]

38.    **HACLA did not recognize its systems were infiltrated for almost a full year.**

---

[22] Bill Toulas, *L.A Housing Authority Discloses Data Breach After Ransomware Attack,* BLEEPING COMPUTER (March 13, 2023), https://www.bleepingcomputer.com/news/security/la-housing-authority-discloses-data-breach-after-ransomware-attack/ (last accessed on May 15, 2023).
[23] *Hackers Target L.A's Housing Authority in a Suspected Ransomware Attack,* LOS ANGELES TIMES, (January 4, 2023), https://www.latimes.com/california/story/2023-01-03/hackers-target-l-a-s-housing-authority-in-a-suspected-ransomware-attack (last accessed on May 15, 2023).
[24] *Man Charged for Participation in Lockbit Global Ransomware Campaign,* The United States Department of Justice (November 10, 2022), https://www.justice.gov/opa/pr/man-charged-participation-lockbit-global-ransomware-campaign (last accessed on May 15, 2023).
[25] *Hackers Target L.A's Housing Authority in a Suspected Ransomware Attack,* LOS ANGELES TIMES (January 4, 2023), https://www.latimes.com/california/story/2023-01-03/hackers-target-l-a-s-housing-authority-in-a-suspected-ransomware-attack; Bill Toulas, *L.A Housing Authority Discloses Data Breach After Ransomware Attack,* BLEEPING COMPUTER (March 13, 2023), https://www.bleepingcomputer.com/news/security/la-housing-authority-discloses-data-breach-after-ransomware-attack/ (last accessed on May 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

39.     To date, HACLA has failed to fully explain the full scope of this breach. HACLA did not disclose how many individuals' PII/PHI was breached, leaving individuals to speculate whether it is likely that their PII/PHI has been compromised.

40.     This attack allowed the hackers to access sensitive information such as full names, Social Security numbers, dates of birth, passport numbers, driver's licenses, state ID numbers, tax ID numbers, military ID numbers, government-issued ID numbers, credit/debit card numbers, financial account numbers, health insurance information, and medical information.

### *HACLA's Duty to Safeguard PII/PHI*

41.     HACLA is one of the nation's largest and leading public housing authorities. HACLA provides affordable housing to more than 83,000 households in its Public Housing and Section 8 rental assistance programs and offers a range of permanent supportive housing programs for homeless households.[26]

42.     As a housing authority, HACLA collects, receives, and accesses its members' extensive individually identifiable information. These records include personal information such as individual's name, Social Security number, date of birth, passport number, driver's license number or state identification number, tax identification number, military identification number, government issued identification number, credit/debit card number, financial account number, health insurance information, and medical information (collectively **"PII/PHI"**).

43.     Through the collection and use of individuals' PII/PHI, HACLA uses third-party companies to advertise to consumers in order to obtain additional public funding. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the Class Members' PII/PHI, HACLA assumed legal and equitable duties to those individuals, including the duty to protect Plaintiff's and Class Members' PII/PHI from disclosure.

---

[26] "About Hacla." HACLA, https://www.hacla.org/en/about-hacla. (last accessed on May 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

44.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[27]

45.     The FTC has issued numerous guides for entities engaged in commerce highlighting the importance of reasonable data security practices.

46.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[28] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

47.     The FTC further recommends that entities not maintain PII/PHI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[29]

48.     The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.     Beyond HACLA's legal obligations to protect the confidentiality of individuals' PII/PHI, HACLA's privacy policy and online representations affirmatively and unequivocally state

---

[27] Federal Trade Commission, *Start With Security*, available athttps://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed on May 15, 2023).
[28] Federal Trade Commission, Protecting Personal Information: A Guide for Business, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136-protecting-personal-information.pdf
[29] Federal Trade Commission, *Start With Security*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed on May 15, 2023).

CLASS ACTION COMPLAINT

that any personal information provided to HACLA will remain secure and protected. For many years, HACLA represented and continues to represent that it is "committed" to value and protecting consumer privacy by making representations such as:

    a.   ***"We are committed to protecting the privacy of our customers and others who may visit our website."***[30]

    b.   ***"[W]e take appropriate measures to safeguard against unauthorized disclosures of information."***[31]

50.    HACLA has unequivocally failed to adhere to a single promise vis-à-vis their duty to safeguard PII/PHI of its applicants. HACLA has made these privacy policies and commitments available in a variety of documents, including its websites. HACLA included these privacy policies and commitments to maintain the confidentiality of its members' sensitive information as terms of its contracts with those members, including contracts entered into with Plaintiff and the Class. In these contract terms and other representations to Plaintiff and Class Members and the public, HACLA promised to take specific measures to protect its members' information, consistent with industry standards and federal and state law. However, it did not.

51.    Plaintiff and Class Members relied to their detriment on HACLA's uniform representations and omissions regarding data security, including HACLA's failure to alert individuals that its security protections were inadequate, or at the very minimum warn individuals of the anticipated and foreseeable data breach.

52.    Since the HACLA data breach, Class Members face a constant threat of continued harm. Now that their sensitive ***personal and medical information - their Social Security numbers, dates of birth, home addresses, medical information*** – is in possession of third parties, Class Members must worry about being victimized throughout the rest of their lives. Data breach affecting private information compromises individual's whereabouts and routines, subjecting them to the danger of potential attacks, embarrassment, or even kidnapping.

---

[30] *Privacy Statement*, HACLA, https://www.hacla.org/en/privacy-statement (last accessed on May 15, 2023).
[31] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

53.     Plaintiff and other similarly situated individuals trusted HACLA with sensitive and valuable PII/PHI. Had HACLA disclosed to Plaintiff and its other members that its data systems were not secure at all and were vulnerable to attack, Plaintiff would not have trusted HACLA with such sensitive information. In fact, HACLA would have been forced to adopt reasonable data security measures and comply with the law.

54.     HACLA knew or should have known that Plaintiff and Class Members would reasonably rely upon and trust HACLA's promises regarding security and safety of its data and systems.

55.     By collecting victims' PII/PHI and utterly failing to protect it by maintaining inadequate security systems, **which were under attack for almost a full year without any detection**, failing to properly archive the PII/PHI, allowing access of third parties, and failing to implement security measures, HACLA caused harm to Plaintiff and all affected individuals.

### *HACLA's Failure to Protect Against the Data Breach*

56.     At all material times, HACLA failed to maintain proper security measures despite its promises of safety and security to individuals who were forced to entrust HACLA with their most private and sensitive information.

57.     HACLA failed to implement basic industry-accepted data security tools to prevent cyber attackers from accessing the HACLA Database: HACLA allowed users to access personal information for almost a full year and failed to encrypt the sensitive personal information within its database. If HACLA had taken either one of these basic security steps, the cyber attackers would not have been able to access or use Plaintiff's or Class Members' sensitive personal information.

58.     It was reasonably foreseeable that HACLA's failure to adequately investigate the security practices and measures in place would allow hackers to one day gain unlawful and unauthorized access to this sensitive information.

59.     HACLA knew that PII/PHI was valuable on the dark web and thus, was aware that HACLA was a potential target of cybercriminals seeking to obtain that information for financial gain or other nefarious purposes. HACLA knew or should have known of the importance of cybersecurity and complied with state and federal law to protect victims' PII/PHI.

CLASS ACTION COMPLAINT

60.     Despite HACLA's full knowledge of the sensitivity of stolen data, HACLA failed to implement any proper security measures to secure and protect the PII/PHI of affected individuals. As a result, countless people now must live the rest of their lives knowing that criminals have the ability to compile, build and amass their profiles for decades to come – exposing them to a never-ending *threat of kidnapping, identity theft, extortion, bullying and harassment*.

**_Impact of Data Breach on Affected Individuals_**

61.     The PII/PHI exposed in the data breach is highly coveted and valuable on underground or black markets. For example, a cyber "black market" exists in which criminals openly post and sell stolen consumer information on underground internet websites known as the "dark web" – exposing consumers to identity theft and fraud for years to come. Identity thieves can use the PII/PHI to: (a) create fake credit cards that can be swiped and used to make purchases as if they were the real credit cards; (b) reproduce stolen debit cards and use them to withdraw cash from ATMs; (c) commit immigration fraud; (d) obtain a fraudulent driver's license or ID card in the victim's name; (e) obtain fraudulent government benefits; (f) file a fraudulent tax return using the victim's information; (g) commit medical and healthcare-related fraud; (h) access financial accounts and records; or (i) commit any number of other frauds, such as obtaining a job, procuring housing, or giving false information to police during an arrest.

62.     Medical data is particularly valuable because unlike financial information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like HACLA, are intended targets of cyber-criminals.

63.     Accordingly, Plaintiff and the Class have suffered actual harm as a result of HACLA's conduct. HACLA failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. This breach allowed hackers to access the PII/PHI of individuals. This PII/PHI has since been or is subject to being publicly leaked online which has allowed for digital and potential physical attacks against Plaintiff and the Class. Now that the PII/PHI has been leaked, it is available for other parties to sell or trade and will continue to be at risk for the indefinite future. "The hackers have encryption skills to cover their tracks and hide what they saw so we will only

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

know the entirety of the data they have with time."[32] In fact, the U.S. Government Accountability Office found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[33] Cybersecurity experts warn, "in 15 years [the victims] could come to find their name was used to buy a condo in Bora Bora."[34]

64.    Exposure of this information to the wrong people can have serious consequences. The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that identity theft can impact an individual's ability to get credit cards and obtain loans, such as student loans or mortgages.[35] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

65.    There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

> *"[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[36]*

---

[32] Howard Blume and Alejandra Reyes-Velarde, *Private Data of 400k LAUSD Students Could be at Risk*, LOS ANGELES TIMES (September 9, 2022), https://www.govtech.com/education/k-12/private-data-of-400k-lausd-students-could-be-at-risk (last accessed on May 15, 2023).

[33] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE: REPORT TO CONGRESSIONAL REQUESTERS (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed on May 15, 2023).

[34] Mark Keierlber, *LAUSD Downplays Student Harm After Cyber Gang Posts Sensitive Data Online*, LA SCHOOL REPORT (November 11, 2022), https://www.laschoolreport.com/cyber-gang-posts-los-angeles-students-sensitive-data-on-dark-web-after-hack/ (last accessed on May 15, 2023).

[35] *Identity Theft: The Aftermath 2017*, Identity Theft Resource Center, https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf (last accessed on May 15, 2023).

[36] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE: REPORT TO

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

66.    **Threat of Identity Theft:** As a direct and proximate result of HACLA's breach of confidence and failure to protect the PII/PHI of individuals, Plaintiff and the Class have also been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this PII/PHI, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen PII/PHI, illegal sales of the compromised PII/PHI on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties, decreased credit scores, lost work time, and other injuries. HACLA, through its misconduct, has enabled numerous bad actors to sell and profit off of PII/PHI that belongs to Plaintiff and the Class.

67.    But for HACLA's unlawful conduct, scammers would not have access to Plaintiff's and the Class Members' contact information. HACLA's unlawful conduct has directly and proximately resulted in a widespread threat of digital attacks against Plaintiff and the Class.

68.    **Credit Card Fraud:** Plaintiff has experienced unauthorized credit card inquiries on several of his banking accounts shortly after the data breach attack. Plaintiff and the Class face ongoing, imminent threats of similar fraud claims and scams, resulting in ongoing monetary loss and economic harm, mitigation expenses, and time spent on credit monitoring, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties, decreased credit scores, lost work time, and other injuries.

69.    **Loss of Time:** As a result of this breach, Plaintiff was forced to spend significant time monitoring all of his personal accounts for fraudulent activity. Plaintiff is experiencing a great amount of distress and frustration in attempting to change his passwords and associated accounts which may be connected to various pieces of stolen PII/PHI. Plaintiff has been living in constant fear and apprehension of further attacks against them.

70.    Plaintiff is now forced to research and subsequently acquire reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates spending out of pocket expenses to pay for these services.

CONGRESSIONAL REQUESTERS (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed on May 15, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

71.     HACLA also used Plaintiff's and Class Members' PII/PHI for profit and continued to use Plaintiff's and Class Members' PII/PHI to share their information with various third parties for HACLA's own benefit. Specifically, through the collection and use of individuals' PII/PHI, HACLA uses third-party companies to advertise to community members in order to obtain additional applications for housing, which ultimately results in HACLA receiving increased public funding. According to HACLA's online website, its funds come from five main sources; HUD's annual operating subsidy, HUD's annual Capital Fund, Section 8 administrative fees, rent from public housing residents plus other programs and capital grants from various sources.[37]

72.     **Phishing Scams:** Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and Social Security numbers. Phishing scams are frequently successful, and the FBI reported that people lost approximately $57 million to such scams in 2019 alone.[38]

73.     As a result of the data breach, Plaintiff and Class Members are at high risk of receiving high-volume of phishing emails and spam telephone calls. Such scams trick individuals into giving account information, passwords, and other valuable personal information to scammers. This significantly increases the risk of further substantial damage to Plaintiff and the Class, including, but not limited to, monetary and identity theft. Due to the breach, Plaintiff and Class Members now need to spend a substantially increased amount of time and effort discerning between genuine emails and emails that are trying to phish sensitive PII/PHI.

74.     **SIM-Swap:** The data leak can also lead to SIM-swap attacks against the impacted individuals.[9] A SIM-swap attack occurs when the scammers trick a telephone carrier to porting the victim's phone number to the scammer's SIM card. By doing so, the attacker is able to bypass two-factor authentication accounts, as are used to access cryptocurrency wallets and other important accounts. The type of personal information that has been leaked poses a profound tangible risk of SIM-swap attacks for the Class.

---

[37] *About Us,* HACLA, https://www.hacla.org/en/about-us (last accessed on May 15, 2023).
[38] *How to Recognize and Avoid Phishing Scams*, FTC CONSUMER ADVICE, https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (last accessed on May 15, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

75.     Individuals who trusted HACLA with their PII/PHI are now more likely to become victims of SIM Swap attacks because of the released personal information.

76.     Given the highly sensitive nature of the information stolen, and its dissemination to unauthorized parties, Plaintiff has already suffered injury and remain at a substantial and imminent risk of future harm.

### Summary of Actual Economic and Noneconomic Damages

77.     In sum, Plaintiff and similarly situated individuals were injured as follows:

 a.     Theft of their PII/PHI and the resulting loss of privacy rights in that information;

 b.     Improper disclosure of their PII/PHI;

 c.     Loss of value of their PII/PHI;

 d.     The amount of ongoing reasonable identity defense services made necessary as mitigation measures;

 e.     Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff is now exposed to;

 f.     Ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this data breach;

 g.     Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this data breach.

### CLASS ALLEGATIONS

78.     Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

"All persons in the United States and whose PII/PHI was accessed, compromised, or stolen in the data breach discovered by HACLA on December 31, 2022." (the **"Class"**).

79.     The Class is comprised of numerous of individuals throughout the United States and the state of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties.

80.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class Members. Common questions of law and fact include, but are not limited to, the following:

a. Whether HACLA's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

b. Whether HACLA's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

c. Whether HACLA's conduct is in violation of California Civil Code Sections 1709, 1710;

d. Whether HACLA's failure to implement effective security measures to protect Plaintiff's and the Class's PII/PHI was negligent;

e. Whether HACLA represented to Plaintiff and the Class that they would protect Plaintiff's and the Class Members' PII/PHI;

f. Whether HACLA owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

g. Whether HACLA breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

h. Whether Class Members' PII/PHI was accessed, compromised, or stolen in the breach;

i. Whether HACLA's conduct caused or resulted in damages to Plaintiff and the Class;

j. Whether HACLA failed to notify the public of the breach in a timely and adequate manner;

k. Whether HACLA knew or should have known that its systems were vulnerable to a data breach;

l. Whether HACLA adequately addressed the vulnerabilities that allowed for the data breach; and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

m.   Whether, as a result of HACLA's conduct, Plaintiff and the Class are entitled to injunctive relief.

81.   Plaintiff's claims are typical of the claims of the proposed Class, as Plaintiff and the members of the Class were harmed by HACLA's uniform unlawful conduct.

82.   Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

83.   Plaintiff and the Class have suffered injury in fact as a result of HACLA's false, deceptive, and misleading representations.

84.   Plaintiff would not have entrusted HACLA with his PII/PHI but for the reasonable belief that HACLA would safeguard his data and PII/PHI.

85.   The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

86.   A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

87.   The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by HACLA's conduct would increase delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision.

88.   HACLA has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for HACLA.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

89. Absent a class action, HACLA will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class Members will continue to suffer losses and HACLA (and similarly situated companies) will be allowed to continue these violations of law.

**COUNT ONE**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.***

90. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

**A.    "Unfair" Prong**

91. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provide to individuals and the injury is one that the individuals themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

92. HACLA's conduct of failing to protect and secure its data-holding systems as alleged herein does not confer any benefit to individuals.

93. HACLA's conduct as alleged herein causes injuries to individuals who do not receive security consistent with their reasonable expectations.

94. HACLA's conduct as alleged herein causes injuries to individuals, who entrusted HACLA with their PII/PHI and whose PII/PHI was leaked as a result of HACLA's unlawful conduct.

95. HACLA's failure to implement and maintain reasonable security measures was also contrary to legislatively declared public policy that seeks to protect individuals' data and ensure entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56 as well as Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

96.     HACLA's failure to adequately protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems violates Section 5 of the FTC Act which prohibits "unfair or deceptive acts or practices in or affecting commerce."

97.     Individuals cannot avoid any of the injuries caused by HACLA's conduct as alleged herein.

98.     The injuries caused by HACLA's conduct as alleged herein outweigh any benefits.

99.     HACLA's conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

100.    HACLA could have furthered its legitimate business interests in ways other than by unfair conduct.

101.    HACLA's conduct threatens individuals by misleadingly advertising their systems as "secure" and exposing individuals' PII/PHI to hackers. HACLA's conduct also threatens other entities, large and small, who play by the rules.

102.    All of the conduct alleged herein occurs and continues to occur in HACLA's enterprise. HACLA's wrongful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

103.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order enjoining HACLA from continuing to engage, use, or employ its unfair business practices.

104.    Plaintiff and the Class have suffered injury-in-fact and have lost money or property as a result of HACLA's unfair conduct. Plaintiff relied on and trusted that HACLA would keep his PII/PHI safe and secure in part based on HACLA's representations regarding its security measures. Plaintiff accordingly provided his PII/PHI to HACLA, reasonably believing and expecting that this information would be safe and secure. Plaintiff and the Class would not have given HACLA sensitive PII/PHI, had they known that their PII/PHI was vulnerable to a data breach. Likewise,

Plaintiff and the members of the Class seek an order mandating that HACLA implement adequate security practices to protect individuals' PII/PHI. Additionally, Plaintiff and the members of the Class seek and request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by HACLA by means of HACLA's unfair and unlawful practices.

105. On March 30, 2023, Plaintiff submitted a Government Claim Form along with a attached copy of the complaint under the Government Tort Claims Act ("GTCA") to Defendant.

### B.    "Fraudulent" Prong

106. California Business and Professions Code Section 17200, *et seq.* considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254, 1267.

107. HACLA's representations that it adequately protects individuals' PII/PHI is likely to deceive members of the public into believing that HACLA can be entrusted with their PII/PHI, and that PII/PHI gathered by HACLA is not in danger of being compromised.

108. HACLA's representations about its data-holding systems, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

109. HACLA knew or should have known of its fraudulent conduct.

110. As alleged in the preceding paragraphs, the material misrepresentations by HACLA detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

111. HACLA could have implemented robust security measures to prevent the data breach but failed to do so.

112. HACLA's wrongful conduct is part of a pattern or generalized course of conduct.

113. Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order enjoining HACLA from continuing to engage, use, or employ its practice of false and deceptive advertising about the strength or adequacy of its security systems. Likewise, Plaintiff and the Class seek an order requiring HACLA to disclose such misrepresentations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

114.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of HACLA's fraudulent conduct. Plaintiff would not have entrusted HACLA with his PII/PHI if he had known that such information would be at risk.

115.   **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order compelling HACLA to implement adequate safeguards to protect individual's PII/PHI retained by HACLA. This includes, but is not limited to improving security systems, deleting data that no longer needs to be retained by HACLA, archiving that data on secure servers, and notifying all affected individuals in a timely manner.

### C.   "Unlawful" Prong

116.   California Business and Professions Code Section 17200, *et seq.*, identifies violations of any state or federal law as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

117.   HACLA's unlawful conduct, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.*

118.   HACLA's conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unlawful conduct.

119.   HACLA has engaged in "unlawful" business practices by violating multiple laws, including California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56 (requiring reasonable data security measures) and California common law. HACLA failed to notify all of its affected customers regarding said breach within a reasonable time, failed to take reasonable security measures, or comply with California common law.

120.   HACLA knew or should have known of its unlawful conduct.

121.   As alleged in the preceding paragraphs, the misrepresentations by HACLA detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

122.   HACLA could have furthered its legitimate business interests in ways other than by its unlawful conduct.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

123.   All of the conduct alleged herein occurs and continues to occur in HACLA's business. HACLA's unlawful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

124.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order enjoining HACLA from continuing to engage, use, or employ its unlawful business practices.

125.   Plaintiff and the Class have suffered injury-in-fact and have lost money or property as a result of HACLA's unfair conduct. Plaintiff and the Class would not have trusted HACLA with their PII/PHI, had they known that their PII/PHI was vulnerable to a data breach. Likewise, Plaintiff and the members of the Class seek an order mandating that HACLA implement adequate security practices to protect individuals' PII/PHI. Additionally, Plaintiff and members of the Class seek and request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by HACLA by means of HACLA's unfair and unlawful practices.

## COUNT TWO

## VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT (Cal. Civ. Code §§ 56, *et seq.*)

126.   Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

127.   HACLA is subject to the requirements and mandates of California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et. seq.* ("CMIA").

128.   Section 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

129.   As a direct result of its negligent failure to adequately protect the data it collected from the Plaintiff and Class Members, HACLA allowed for a data breach which released the confidential personal and medical information of the Plaintiff and Class Members to criminals and/or third parties.

CLASS ACTION COMPLAINT

130.   The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental or physical condition, or treatment."

131.   The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patients name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

132.   The compromised data was individually identifiable because it was accompanied by elements sufficient to allow identification of the Plaintiff by the third-parties to whom the data was disclosed, in the form of Internet cookies, IP addresses, unique device identifiers.

133.   HACLA lawfully came into possession of the Plaintiff's and Class Members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of such medical records in a manner that preserved its confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential medical information.

134.   HACLA further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained Plaintiff's and Class Members' medical information.

135.   As a direct and proximate result of HACLA's violations of the CMIA, Plaintiff and Class Members have been injured within the meaning of the CMIA.

## COUNT THREE

### VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT.

### CALIFORNIA CIVIL CODE SECTION 1798.80, *et seq*.

136.   Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

137.   To ensure that personal information about California residents is protected, the California Legislature enacted the Customer Records Act, California Civil Code § 1798.81.5, which requires that any business that "owns licenses, or maintains personal information about a California

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

138.   As described above, HACLA failed to implement and maintain reasonable security procedures and practices to protect the Plaintiff's PII/PHI, and thereby violated the California Customer Records Act.

139.   Under California Civil Code § 1798.82, any business that obtains and retains PII/PHI must promptly and "in the most expedient time possible and without unreasonable delay" disclose any Data Breach involving such retained data.

140.   By its above-described wrongful actions, inaction, omissions, and want of ordinary care, HACLA failed to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's PII/PHI.

141.   HACLA also unreasonably delayed and failed to disclose the Data Breach (and threat of the data breach) to impacted individuals, including Plaintiff, in the most expedient time possible and without unreasonable delay when they knew, or reasonably believed, Plaintiff's PII/PHI had been wrongfully disclosed to an unauthorized person or persons.

142.   As a direct and proximate result of HACLA's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the California CRA, Plaintiff has suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and financial fraud— risks justifying expenditures for protective and remedial services for which he is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of his PII/PHI, (iv) deprivation of the value of his PII/PHI, for which there is a well-established national and international market, and/or (v) the financial and temporal cost of monitoring his credit, monitoring his financial accounts, and mitigating his damages.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

CLASS ACTION COMPLAINT

143.   Plaintiff is also entitled to injunctive relief under California Civil Code Section 1798.84(e).

## COUNT FOUR

### NEGLIGENCE

144.   Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

145.   HACLA owed a duty to the Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that individuals' PII/PHI was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

146.   HACLA also had a duty to destroy Plaintiff's and Class Members' PII/PHI within an appropriate amount of time after it was no longer required by HACLA, in order to mitigate the risk of the stale PII/PHI being compromised in a data breach.

147.   HACLA's duties to use reasonable care arose from several sources, including those described below. HACLA had a common law duty to prevent foreseeable harm to others, including the Plaintiff and members of the Class, who were the foreseeable and probable victims of any inadequate security practices.

148.   HACLA had a special relationship with the Plaintiff and Class Members. Plaintiff and Class Members were compelled to entrust HACLA with their PII/PHI. At relevant times, Plaintiff and Class Members understood that HACLA would take adequate security precautions to safeguard that information. Only HACLA had the ability to protect the Plaintiff's and Class Members' PII/PHI stored on the HACLA data base.

149.   Further, HACLA's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII/PHI. Various FTC

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

publications and data security breach orders further form the basis of HACLA's duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

150.   HACLA knew or should have known that the Plaintiff's and the Class Members' PII/PHI is information that is frequently sought after by hackers.

151.   HACLA knew or should have known that the Plaintiff and the Class Members would suffer harm if their PII/PHI was leaked.

152.   HACLA knew or should have known that its security systems were not adequate to protect the Plaintiff's and the Class Members' PII/PHI from a data breach, especially in light of the increase in data breaches in the public entity sector.

153.   HACLA knew or should have known that adequate and prompt notice of the data breach was required such that the Plaintiff and the Class could have taken more swift and effective action to change or otherwise protect their PII/PHI, rather than waiting two full days to notify. HACLA failed to provide timely notice upon discovery of the data breach.

154.   HACLA's conduct as described above constituted an unlawful breach of its duty to exercise due care in collecting, storing, and safeguarding Plaintiff's and the Class Members' PII/PHI by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, HACLA did not implement, design, or maintain adequate measures to detect a data breach when it occurred.

155.   HACLA's conduct as described above constituted an unlawful breach of its duty to provide adequate and prompt notice of the data breach.

156.   HACLA and the Class entered into a special relationship when Class Members entrusted HACLA to protect their PII/PHI. Plaintiff and the Class trusted HACLA and in doing so, provided HACLA with their PII/PHI, based upon HACLA's representations that it would implement adequate systems to secure their information. HACLA did not do so. HACLA knew or should have known that their security system was vulnerable to a data breach, especially after similar public entities were recently targeted with cybersecurity attacks.

157. HACLA breached its duty in this relationship to implement and maintain reasonable measures to protect the PII/PHI of the Class.

158. Plaintiff's and Class Members' PII/PHI would have remained private and secure had it not been for HACLA's wrongful and negligent breach of its duties. The leak of Plaintiff's and the Class Members' PII/PHI, and all subsequent damages, was a direct and proximate result of HACLA's negligence.

159. HACLA's negligence was, at least, a substantial factor in causing Plaintiff's and the Class Members' PII/PHI to be improperly accessed, disclosed, and otherwise compromised, and in causing the Class Members' other injuries because of the data breaches.

160. The damages suffered by the Plaintiff and the Class Members was the direct and reasonably foreseeable result of HACLA's negligent breach of its duties to adequately design, implement, and maintain security systems to protect Plaintiff's and the Class Members' PII/PHI. HACLA knew or should have known that their security for safeguarding Plaintiff's and the Class Members' PII/PHI was vulnerable to a data breach.

161. HACLA's negligence directly caused significant harm to Plaintiff and the Class. Specifically, Plaintiff and the Class are now subject to numerous attacks, including various phishing scams and identity theft.

162. HACLA had a fiduciary duty to protect the confidentiality of its communications with the Plaintiff and members of the Class by virtue of the explicit privacy representations HACLA made on its website to the Plaintiff and members of the Class.

163. HACLA had information relating to the Plaintiff and members of the Class that it knew or should have known to be confidential.

164. Plaintiff's and Class Members' communications with HACLA about sensitive PII/PHI information and their status as applicants for low-income housing was not matters of general knowledge.

165. HACLA breached its fiduciary duty of confidentiality by designing its data protection systems in a way to allow for a data breach of a massive caliber.

166.   At no time did the Plaintiff or members of the Class give informed consent to HACLA's conduct.

167.   As a direct and proximate cause of HACLA's actions, Plaintiff and the Class suffered damage in that the information they intended to remain private is no longer so and their personally identifiable communications relating to health care were disclosed to, tracked, and intercepted by the third-party Internet tracking companies without their knowledge or consent.

## COUNT FIVE

### INVASION OF PRIVACY

168.   Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

169.   Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in the PII/PHI that HACLA failed to adequately protect against disclosure from unauthorized parties.

170.   HACLA owed a duty to Plaintiff and Class Members to keep their PII/PHI confidential.

171.   HACLA failed to protect the PII/PHI of Plaintiff and Class Members from unauthorized and unknown release to third parties.

172.   By failing to keep Plaintiff's and Class Members' PII/PHI safe, knowingly utilizing the unsecure systems and practices, HACLA unlawfully invaded Plaintiff's and Class Member's privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their PII/PHI from disclosure to unauthorized persons; and (iii) enabling the disclosure of Plaintiff's and Class Members' PII/PHI without consent.

173.   HACLA knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider their actions highly offensive.

174.   HACLA knew, or acted with reckless disregard of the fact that, public sector entities which possess a significant amount of sensitive information for a large number of people were

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

highly vulnerable to cyberattacks and thus, using inadequate security software was vulnerable to data breaches prior to the Data Beach.

175. As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their PII/PHI was unduly frustrated and thwarted and caused damages to Plaintiff and Class Members.

176. Plaintiff seeks injunctive relief on behalf of the Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, HACLA's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for the Plaintiff and the Class.

**COUNT SIX**

**BREACH OF CONFIDENCE**

177. Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

178. At all times during Plaintiff's and Class Members' interactions with Defendant, HACLA was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII/PHI that Plaintiff and Class Members provided to Defendant.

179. Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII/PHI would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

180. Plaintiff and Class Members provided their PII/PHI to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII/PHI to be disseminated to any unauthorized third parties.

181. Plaintiff and Class Members provided their PII/PHI to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII/PHI from unauthorized disclosure.

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

182.   Defendant voluntarily received in confidence Plaintiff's and Class Members' PII/PHI with the understanding that PII/PHI would not be disclosed or disseminated to unauthorized third parties or to the public.

183.   Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' PII/PHI was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

184.   As a proximate result of such unauthorized disclosures, Plaintiff and Class Members suffered damages.

185.   But for Defendant's disclosure of Plaintiff's and Class Members' PII/PHI in violation of the parties' understanding of confidence, their PII/PHI would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

186.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's inadequate security of Plaintiff's and Class Members' PII/PHI. Defendant knew or should have known that its methods of accepting, storing, transmitting and using Plaintiff's and Class Members' PII/PHI was inadequate.

187.   As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) threat of identity theft; (ii) the loss of the opportunity of how their PII/PHI is used; (iii) the compromise, publication, and/or theft of their PII/PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII/PHI; (v) the continued risk to their PII/PHI, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII/PHI in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII/PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

188.   As a direct proximate result of such unauthorized disclosures, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

### COUNT SEVEN

### UNJUST ENRICHMENT

189.   Plaintiff herein repeats, realleges, and fully incorporates all allegations in all preceding paragraphs.

190.   Plaintiff and Class Members conferred a monetary benefit on HACLA – namely, they provided and entrusted HACLA with their PII/PHI.

191.   In exchange, Plaintiff and Class Members should have been entitled to have HACLA protect their PII/PHI with adequate data security.

192.   HACLA appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from HACLA's conduct toward Plaintiff and Class Members as described herein – namely, (a) Plaintiff and Class Members conferred a benefit on HACLA, and HACLA accepted or retained that benefit; and (b) HACLA used Plaintiff and Class Members' PII/PHI for business purposes.

193.   HACLA failed to secure Plaintiff's and Class Members' PII/PHI and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

194.   HACLA acquired the PII/PHI through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

195.   Plaintiff and Class Members have no adequate remedy at law.

196.   Under the circumstances, it would be unjust and unfair for HACLA to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

197.   Under the principles of equity and good conscience, HACLA should not be permitted to retain the PII/PHI belonging to Plaintiff and Class Members because HACLA failed to implement the data management and security measures that industry standards mandate.

198.   HACLA should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from the use of Plaintiff and Class Members' PII/PHI.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

**COUNT EIGHT**

**CONVERSION**

199.    Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

200.    Plaintiff and Class Members were the owners and possessors of their PII/PHI.

201.    Courts recognize that internet users have a property interest in their personal information and data. *See Calhoun v. Google, LLC,* 526 F. Supp. 3d 605, at *21 (N.D. Cal. Mar. 17, 2021) (recognizing property interest in personal information and rejecting Google's argument that "the personal information that Google allegedly stole in not property"); *In re Experian Data Breach Litigation,* 2016 U.S. Dist. LEXIS 184500, at *5 (C.D. Cal. Dec. 29, 2016) (loss of value of PII is a viable damages theory); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("The growing trend across courts that have considered this issue is to recognize the lost property value of this [personal] information."); *Simona Opris v. Sincera,* 2022 U.S. Dist. LEXIS 94192, (E.D Pa. 2022) (collecting cases).

202.    The economic value of this property interest in personal information is well understood, as a robust market for such data drives the entire technology economy. As experts have noted, the world's most valuable resource is "no longer oil, but data," and has been for years now.[39]

203.    As the result of Defendant's wrongful conduct, Defendant has interfered with Plaintiff's and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

204.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class Members suffered injury, damage, loss or harm.

205.    In failing to adequately safeguard Plaintiff's PII/PHI, Defendant has acted with malice, oppression and in conscious disregard of the Plaintiff's and Class Members' rights.

206.    Plaintiff and the Class Members did not consent to Defendant's mishandling and loss of their PII/PHI.

---

[39] *The world's most valuable resource is no longer oil, but data.* The Economist (May 6, 2017).

36

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

207.   Plaintiff seeks injunctive relief restitution and all other damages available under this cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment and relief on all cause of action as follows:

A.   That this Action may be maintained as a Class Action, that Plaintiff be named as Class Representative of the Class, that the undersigned be named as Lead Class Counsel of the Class, and that notice of this Action be given to Class Members;

B.   An order:

   a.   Prohibiting HACLA from engaging in the wrongful acts stated herein (including HACLA's failure to provide adequate notice to all affected individuals);

   b.   Requiring HACLA to implement adequate security protocols and practices to protect individuals' PII/PHI consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

   c.   Mandating the proper notice be sent to all affected individuals, and posted publicly;

   d.   Requiring HACLA to protect all data collected through its account creation requirements;

   e.   Requiring HACLA to delete, destroy, and purge the PII/PHI of Plaintiff and Class Members unless HACLA can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

   f.   Requiring HACLA to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII/PHI;

   g.   Requiring HACLA to engage independent third-party security auditors and conduct internal security audit and testing, including simulated

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

attacks, penetration tests, and audits on HACLA's systems on a periodic basis;

h. Requiring HACLA to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

i. Requiring HACLA to segment data by, among other things, creating firewalls and access controls so that if one area of HACLA's network is compromised, hackers cannot gain access to other portions of HACLA's systems

j. Requiring HACLA to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

k. Requiring HACLA to conduct systematic scanning for data breach related issues;

l. Requiring HACLA to train and test its employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the PII/PHI data;

m. Requiring HACLA to routinely and continually conduct internal training and education, at least annually, to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

n. Requiring HACLA to implement a system of testing to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with HACLA's policies, programs and systems for protecting PII/PHI;

o. Requiring HACLA to implement, maintain, regularly review and revise as necessary, a threat management program designed to appropriately

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

monitor HACLA's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated; and

     p.  Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

C.  That the Court award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

D.  That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against HACLA to which Plaintiff and the Class are entitled, including but not limited to restitution and an Order requiring HACLA to cooperate and financially support civil and/or criminal asset recovery efforts;

E.  Plaintiff and the Class be awarded with pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

F.  Plaintiff and the Class be awarded with the reasonable attorneys' fees and costs of suit incurred by their attorneys;

G.  Plaintiff and the Class be awarded with treble and/or punitive damages insofar as they are allowed by applicable laws; and

H.  Any and all other such relief as the Court may deem just and proper under the circumstances.

Dated: May 18, 2023             **CLARKSON LAW FIRM, P.C.**

                                _____
                                Ryan Clarkson, Esq.
                                Yana Hart, Esq.
                                Tiara Avaness, Esq.
                                Valter Malkhasyan, Esq.

CLASS ACTION COMPLAINT